## FRANK CINFEL v. W. J. MALENA ET AL.

FILED JANUARY 8, 1903.  No. 12,453.

Commissioner's opinion, Department No. 2.

1. **Partnership Property:** REPLEVIN. The joint owners of partnership property, being all joined as plaintiffs, can maintain replevin to recover the possession of their personal property, against a stranger who claims an interest therein and detains it from the possession of any one of them.

2. **Replevin:** ACTION: DISMISSAL: BAR. The commencement of a suit in replevin which was immediately dismissed without prejudice, and the property in question returned to the officer, to be delivered by him to the defendant, will not operate as a bar to the bringing of a subsequent action.

3. ———: ———: ———: ———. In such a case the property will not be considered to have been in plaintiff's possession at the time the subsequent action was commenced.

4. **Conflicting Evidence.** The verdict of a jury based on conflicting evidence will not be set aside unless we can say, upon an examination of all of the testimony, that it is clearly wrong.

5. **Joint Action in Replevin.** Where a joint owner of personal property who, without being consulted by the others, is made a plaintiff with them jointly in an action in replevin to recover the possession thereof, makes no objection to the use of his name in the prosecution of the suit, the defendant can not object for him, and thus defeat the action.

ERROR from the district court for Stanton county. Replevin action, commenced originally in county court. Tried below before GRAVES, J. Judgment for plaintiffs. *Affirmed.*

*William Wallace Young* and *George A. Eberly,* for plaintiff in error.

*John A. Ehrhardt, contra.*

BARNES, C.

This action was originally commenced in the county court of Stanton county, by W. J. Malena, Frank Trojan and Joseph Kabas, who claimed to be joint owners of a

Syllabus by court; catch-words by editor.

certain threshing machine and horse power, to recover the immediate possession thereof from Frank Cinfel and others. From a judgment of the county court an appeal was taken to the district court, and the cause was there tried to a jury. The result of the trial was a verdict in favor of the plaintiffs, and judgment was entered thereon. From that judgment the defendant Frank Cinfel prosecutes error to this court.

The claims of the respective parties, and facts developed upon the trial, are substantially as follows: It was claimed on the part of the plaintiffs in the court below that on the 20th of June, 1897, Joseph Malena, the father of the plaintiff W. J. Malena, together with one John Kabas and one Anton Cinfel, purchased the threshing machine and horse power in question in partnership, and became the joint owners thereof, each owning a one-third interest therein. It appears that these parties ran the machine during that year, and the year following, and it is contended that each of them received one-third of the profits which accrued from its use. In 1898 Joseph Malena sold and conveyed his one-third interest therein to his son, W. J. Malena, one of the plaintiffs in the court below. It also appears that John Kabas, one of the original purchasers of the machine, sold and conveyed his one-third interest therein to his son, Joseph Kabas, who is also one of the plaintiffs in the lower court. It further appears that in the month of May, 1899, the one-third interest in the property, which it is claimed was owned by Anton Cinfel, was sold under an execution issued on a judgment of the district court for Stanton county against the said Anton Cinfel and in favor of the Aultman-Taylor Machinery Company, and the same was purchased by Frank Trojan, who thus became the other joint owner thereof. It is claimed that the plaintiffs in the court below in that manner obtained their title to and ownership of the property in question. A great deal of testimony was introduced to substantiate these claims, and we can say, after a careful examination of the record and bill of exceptions herein,

that they were sustained by sufficient evidence. On the other hand, it was contended that at the time of the original purchase of the property in question, John Kabas bought a two-thirds interest therein, that the other one-third was purchased by Joseph Malena, and that Anton Cinfel never had any interest therein. It was further claimed that John Kabas sold and conveyed one-half of his interest in the property to Frank Cinfel, who is his son-in-law, for the sum of $125, on the 23d day of August, 1898. It appears that Frank Cinfel did not take possession of the property, or make any claim to his alleged one-third of it, during that year; that at the end of the threshing season the machine was stored in a shed on the premises of Joseph Malena, which was constructed out of material purchased and paid for by Malena, Kabas, and Anton Cinfel. It was further shown by the testimony that at the beginning of the threshing season in 1899, W. J. Malena, Frank Trojan and Joseph Kabas jointly took possession of the machine and commenced work with it. After threshing some days Frank Cinfel sent word to his brother-in-law, Joseph Kabas, to come over and do his threshing. Thereupon the machine was moved to the premises occupied by Frank Cinfel, who informed them that he was not quite ready to thresh. The machine was left there on his premises for two or three days, during which time it rained, and the weather was unsuitable for threshing, and when Frank Trojan went to the premises to begin work he found the machine running, and was told that Frank Cinfel claimed to be the owner of a one-third interest therein. Cinfel excluded Trojan from the use of the machine, and refused to deliver the possession of it to him and the other joint owners thereof. Thereupon a suit was commenced in the county court to recover possession of the property, but upon finding that there was a defect of parties, the action was dismissed, and the property returned by the officer and others to the possession of Frank Cinfel, and was placed on his premises where it was situated before the commencement of the action. This action was

13

afterwards commenced in the name of W. J. Malena, Frank Trojan and Joseph Kabas, as plaintiffs, against Frank Cinfel and others, defendants. It is impossible to quote the testimony or to give even a summary statement of it, because it is very voluminous. It is sufficient to say that the evidence was conflicting on the questions in dispute, but was amply sufficient to sustain the findings of the jury, which necessarily included the fact of the former ownership of one-third of the property by Anton Cinfel, the fact of the sale of his interest to Frank Trojan, and the further fact that Frank Cinfel had no interest whatever therein.

1. It is first contended by the plaintiff in error that the defendants were mistaken in their remedy; that an action in replevin would not lie to determine the right of possession to and the ownership of an undivided one-third interest in the property in question. It must be conceded that a partner or joint owner of personal property can not maintain replevin against his copartner, or another joint owner, to recover his undivided interest therein. This case, however, is not within that rule. This is a suit where all of the partners or joint owners of the property seek to obtain the possession of the whole of it from one whom they allege is a stranger and has no interest therein. Such an action can be maintained. Cobbey, Replevin, sec. 227. Indeed, no good reason can be found why such action in replevin will not lie. If the plaintiffs establish their joint ownership, and the fact that they are entitled to the immediate possession of the property, they will recover; while, on the other hand, if the defendant shows that he is the owner of the part interest therein, which is claimed by him, he will defeat the plaintiffs' action. We hold that plaintiffs in the court below did not mistake their remedy, and their action was properly maintained.

2. Counsel for the plaintiff in error contends that when this action was commenced in the county court of Stanton county the property in question was in plaintiffs' possession, and for that reason replevin would not lie. We have

examined the evidence upon that question and find that it discloses, beyond question, that the former action in replevin was dismissed and the property was returned to the actual possession of the plaintiff in error.   In fact, it was taken back to his premises and was placed by the officer, and the others in charge of it, exactly where it was found when they took it.   They thereupon demanded the possession of it from him and he refused to deliver it to them.   This much he admits in his own testimony.   But even if this were not the fact, when the former replevin action was dismissed and the property was turned back to the sheriff to be delivered to the defendant therein, from that moment he was in constructive possession of it, and replevin would lie.   *Teeple v. Dickey,* 94 Ind., 124; *Louthain v. Fitzer,* 78 Ind., 449; *Hadley v. Hadley,* 82 Ind., 75; *Walbridge v. Shaw,* 7 Cush. [Mass.], 560.   The contention of plaintiff in error upon that point can not be sustained.

3. It is claimed that the verdict in this case is not sustained by the evidence.   As we have said in the state-- ment of the case, for want of space we are unable to quote the testimony or any considerable portion of it.   An examination of the bill of exceptions shows us that the evidence was conflicting as to whether or not Frank Cinfel had any interest in the property.   The preponderance of the evidence was against him.   In fact, the jury would not have been justified in returning any other verdict.   It appears beyond question that Anton Cinfel was the owner of one-third of the property in question at the time it was sold under the execution hereinbefore mentioned.   It seems to be equally well established that Frank Cinfel, who was a relative of his, entered into an arrangement with his father-in-law, John Kabas, and Anton to cover up Anton's interest in the property.   For that purpose John Kabas claimed that when the property was bought he owned two-thirds of it, and sold one-third of it to Frank, and that Anton never had any interest therein.   While these three parties testified to that fact in substance, yet the testimony of the other witnesses and the facts and cir-

cumstances surrounding the transaction fairly overwhelmed them, and exposed the falsity of their claim. The jury having determined this question upon conflicting evidence, the verdict should not be set aside.

4. Lastly, it is claimed that the action could not be maintained because Joseph Kabas was an unwilling plaintiff. It is sufficient to say in answer to this contention that Joseph was made a party plaintiff, and made no complaint in relation to it. He seems to have been somewhat indifferent in the matter; so much so that he did not ask to be discharged by the court. Neither did he make any application to be indemnified against the costs of the action, as he might have done if he so desired. His testimony upon that question is as follows:

Q. Did they ever ask you if they could use your name?

A. No, sir, they did not.

Q. Did you ever tell them they could use your name as a party plaintiff?

A. No, sir.

Cross-examined by Mr. Ehrhardt:

Q. Did you ever tell them they could not use your name?

A. No, sir.

Q. You never said anything to them about it?

A. No, sir.

Q. You never said anything to Frank Trojan and W. J. Malena about using your name in that lawsuit?

A. No, sir.

Joseph Kabas having been properly made a plaintiff in the action, and having himself taken no exceptions thereto, the defendant could not avail himself of the indifference or lack of interest in the matter exhibited by him. This disposes also of the assignment that the court erred in sustaining an objection to a question propounded to Frank Trojan, by which it was sought to show that Joseph Kabas wanted the property left with Frank Cinfel. No particular objections are made to the instructions in this case, or any of the other matters that transpired upon the trial. The case appears to have been fairly tried. The

verdict of the jury is a just one, and it being fully sustained by the evidence, we recommend that the judgment of the district court be affirmed.

OLDHAM and POUND, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.